# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-0187V
UNPUBLISHED

| | |
|---|---|
| GARY ALLEN,<br><br>              Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>              Respondent. | Chief Special Master Corcoran<br><br>Filed: February 17, 2021<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Site of Vaccination<br>Influenza (Flu) Vaccine; Shoulder<br>Injury Related to Vaccine<br>Administration (SIRVA) |

*Bridget Candace McCullough*, Muller Brazil, LLP, Dresher, PA, for petitioner.

*Naseem Kourosh*, U.S. Department of Justice, Washington, DC, for respondent.

### **FINDINGS OF FACT**[1]

On February 24, 2020, Gary Allen filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered left shoulder injuries related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine received on October 25, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find that the flu vaccine Petitioner received in October 2017 was more likely than not administered in his left arm.

## I. Relevant Procedural History

On February 24, 2020, Mr. Allen filed the petition along with Exhibits 1-12 containing medical records and an affidavit (ECF No. 1). Petitioner filed a Statement of Completion on March 4, 2020 (ECF No. 8). On March 4, 2020, the case was activated and assigned to the SPU (ECF No. 9).

A telephonic status conference was held on April 16, 2020. Scheduling Order, issued Apr. 17, 2020 (ECF No. 12). During the conference, there was discussion about the details regarding the October 25, 2017 administration of the flu vaccine. The petition asserted the vaccine was administered in Petitioner's left shoulder, but the vaccine administration record indicated it was administered in his *right* deltoid. Petition at 1, Ex. 1 at 2. Petitioner's counsel stated that it was Mr. Allen's position that the site of vaccine administration had been incorrectly recorded in the record. The parties were encouraged to discuss how to address this factual issue.

On June 8, 2020, Respondent filed a status report setting forth counsel's informal assessment of the case (ECF No. 13). Respondent suggested that Petitioner obtain and file certified records concerning the vaccination from the pharmacy where the vaccine was administered, as well as affidavit evidence from the pharmacist who administered the vaccine. *Id.* To that end, Petitioner filed certified records from Albertson's Pharmacy on September 11, 2020, and later re-filed the same record as Exhibit 13 on February 12, 2021 (ECF Nos. 19, 27).[3] On September 24, 2020, Petitioner was directed to file an affidavit from the pharmacist who administered the vaccine (ECF No. 20).

On October 26, 2020, a telephonic status conference was held (ECF No. 23). Petitioner's counsel reported that an affidavit from the pharmacist could not be filed because the pharmacist's identity was not revealed in the vaccine administration records. *Id.* The parties discussed how to proceed, and agreed that resolution of the administration issue on the papers would be appropriate. *Id.*

On December 3, 2020, Petitioner filed a motion for ruling on the record (ECF No. 24). On December 17, 2020, respondent filed a response (ECF No. 25). On December 17, 2020, Petitioner's counsel reported that Petitioner did not intend to file a reply. Informal

---

[3] The September 11, 2020 filing was stricken because it was labeled with a duplicate exhibit number (ECF No. 26).

2

Communication, dated Dec. 18, 2020. The issue of the site of vaccine administration is now ripe for resolution.

## II.     Issue

At issue is whether Petitioner received the vaccination alleged as causal in his left arm. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination).

## III.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV. Finding of Fact

I make these findings after a complete review of the record, including all medical records, affidavits, the motion and response, and other evidence filed. Specifically, I rely upon the following evidence:

- Ex. 1 at 2, establishing that a flu vaccine was administered to Petitioner on October 25, 2017. This record states the vaccine was administered intramuscularly, and "R" is circled, suggesting Petitioner's right deltoid as the administration situs.

- Ex. 13 at 4-5, a certified record from the pharmacy documenting that a flu vaccine was dispensed for Petitioner on October 25, 2017, but not indicating the vaccination site or other details pertaining to administration.

- Ex. 4 at 36, a record of a December 27, 2017 visit to a licensed massage therapist at Lutheran Medical Center where Petitioner reported that his "left

4

upper arm has been sore and has difficulty raising arm ever since he got a flu shot in October 2017."

- Ex. 2 at 32, a record of a January 17, 2018 office visit with Dr. Todd Wisser, documenting that Petitioner reported left arm tenderness and that he "had pain in this area since an influenza vaccine 10/2017." Dr. Wisser assessed Petitioner with deltoid tendinitis and added "[p]ain noted after influenza vaccine October 2017, it has been roughly 3 months the patient has not had any improvement." *Id*. On examination, Petitioner was found to have tenderness to palpation at the insertion of the deltoid tendon to the humerus, pain with abduction of his left arm, but full passive range of motion. *Id*. at 33.

- Ex. 2 at 30, a record of a January 24, 2018 ultrasound of Petitioner's left shoulder, noting that the ultrasound was indicated due to "[p]ain in the region of the deltoid muscle attachment following a flu shot in October." *Id*. The ultrasound found no abnormality at the deltoid muscle attachment on the humerus and a suspected small intrasubstance tear of the rotator cuff tendon measuring 2 mm thick. *Id*.

- Ex. 3 at 33, pertaining to a March 27, 2018 physical therapy initial examination and noting that the evaluation was due to "left shoulder pain that onset after getting a flu shot in October of 2017. The patient states he had no pain prior to the injection, although after developed discomfort that has remained consistent since." *Id*. His primary concern was noted as "L shoulder discomfort that onset following a flu shot in October 2017." *Id*.

- Ex. 8 at 50, a record of a May 31, 2018 visit with Dr. Charles Gottlob, assessing Petitioner with bursitis and noting that "Gary had probably a proximal flu vaccine in October and has developed some subacromial bursitis related to that. He had an ultrasound that showed a '2 mm interstitial partial tear of his rotator cuff', that is really clinically relevant. I think the issue really is that he just developed a bursitis from the flu vaccine." *Id*. This record, confusingly, refers to problems with both Petitioner's *left* and *right* shoulders. *Id.* Dr. Gottlob assessed Petitioner with "bursitis of *left* shoulder" and "Pain in *left* shoulder," and directly below that states "*Right* shoulder bursitis." *Id*. (emphases added). Based on the context, including the significance placed on the ultrasound findings, which resulted from an ultrasound of Petitioner's left shoulder, I find that Dr. Gottlob's assessment related to Petitioner's left shoulder and that the reference to right shoulder bursitis appears to be a typographical error.

5

- Ex. 10, Petitioner's affidavit, at ¶¶ 4-6, explaining that Petitioner arrived at the flu vaccine clinic 15 minutes before it closed, and that when he arrived there were two or three other people waiting and only one person, who seemed flustered by the number of people, administering vaccines. Petitioner stated that he requested that the vaccine be administered in his left arm because he is right handed, and noted that the person administering vaccines "seemed rushed and was not talkative." *Id.* at ¶ 8. Petitioner added:

    > Before I knew it, he put the needle in my left shoulder. I instantly felt a pain that was different than other flu vaccinations I received. When I looked up, the gentleman was already working with the next person in line. I no longer saw the piece of paper that I filled out and he did not complete his portion of the form while he was sitting with me.

    Ex. 10 at ¶ 9.

The above medical entries preponderantly support the conclusion that the October 25, 2017 flu vaccine Mr. Allen received was likely administered in his left arm. Although Ex. 1 records the site of vaccination as Petitioner's right deltoid, the preponderance of the evidence indicates that the vaccine was more likely administered in Petitioner's left arm. Indeed – virtually all evidence in the record temporally thereafter supports that allegation. In seeking treatment, Petitioner consistently related his left shoulder pain to his October 2017 flu vaccination. Petitioner's assertion that the person who administered the vaccine did not complete the form, including the portion indicating in which arm the vaccine was administered, in Petitioner's presence also provides a rational explanation for the purported error.

Accordingly, I find there is preponderant evidence to establish that the vaccination alleged as causal in this case was, more likely than not, administered in Petitioner's left arm on October 25, 2017. Thus, Petitioner's motion for a fact ruling is granted.

### V.     Scheduling Order

Petitioner should proceed with preparing a demand, with supporting documentation, for Respondent's consideration. I understand that Respondent cannot provide a response to this demand until he has obtained formally his client's position. However, the parties should strive to be in a position to immediately discuss damages once Respondent indicates he is amenable to consideration of Petitioner's demand after Respondent's review is complete. In addition, it is sensible for Petitioner to calculate likely damages as quickly as possible in any case pending in SPU.

**Accordingly:**

- **Petitioner shall file, by no later than <u>Wednesday, March 31, 2021</u>, a status report providing the following information:**

    - **Whether and when Petitioner provided a demand for damages with supporting documentation to Respondent's counsel;**
    - **Whether there is a Medicaid lien in this case and, if so, when Petitioner anticipates providing documentation of the lien to Respondent;**
    - **Petitioner's current treatment status and condition;**
    - **Whether all updated medical records have been filed; and**
    - **A list of each component of damages allegedly suffered by Petitioner.**

- **Respondent shall file a status report indicating how he intends to proceed in this case by <u>Wednesday, May 05, 2021</u>.** At a minimum, the status report shall indicate whether he is willing to engage in tentative discussions regarding settlement or proffer, is opposed to negotiating at this time, or that the Secretary has not yet determined his position. In the event Respondent wishes to file a Rule 4(c) report, he may propose a date for filing it, but shall indicate his position on entering into negotiations regardless of whether he wishes to file a Rule 4(c) report.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master